UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:08-cr-00016-SEB-TAB |
| | ) | |
| ROLLIE MONTEZ MITCHELL, | ) -01 | |
| | ) | |
| Defendant. | ) | |

**Order Granting in Part Motions for Sentence Reduction**

Defendant Rollie Montez Mitchell has filed two motions asking the Court to reduce his sentence under the First Step Act of 2018. Dkts. 221, 222. For the reasons stated below, the motions are **granted in part** to the extent that Mr. Mitchell's sentence of incarceration is reduced to 480 months but otherwise **denied**.

**I.    Background**

In 2009, a jury convicted Mr. Mitchell of knowingly distributing 50 grams or more of cocaine base—otherwise known as crack cocaine—in violation of 21 U.S.C. § 841. Dkt. 113. The Seventh Circuit summarized the facts of the case as follows:

> In June 2006, Mitchell sold approximately 144 grams of cocaine base to Tony Hurd, a police informant in Richmond, Indiana. Hurd also purchased cocaine base from two of Mitchell's associates, Billy Hicks and Tyree Smith. Mitchell, Hicks, and Smith were all charged in state court with controlled substance offenses. Following the state charges, the county clerk's office erroneously—and tragically—made public Hurd's identity. In July, Hurd began receiving threats such as "snitch, you're going to die." In August, Hurd was murdered—shot eight times while he sat in an automobile in a gas station parking lot near Dayton, Ohio . . . . At sentencing hearing, the prosecution presented evidence that Mitchell participated in planning and funding Hurd's murder, although there was no suggestion that he was the actual triggerman.

*United States v. Mitchell*, 635 F.3d 990, 991–92 (7th Cir. 2011).

At the time, the statutory range of imprisonment for that amount of crack was 10 years to life. 21 U.SC. § 841(b)(1)(A)(iii) (eff. Apr. 19, 2009, to Aug. 2, 2010). In the course of the prosecution, however, the government filed an Information under 21 U.S.C. § 851 alleging that Mr. Mitchell had a previous conviction for a drug felony, so the mandatory minimum sentence was 20 years under the law as it existed at the time. *Id.*; *see also* dkt. 13 (§ 851 Information). At sentencing, the Court heard evidence and found, by a preponderance of the evidence, that Mr. Mitchell participated in Mr. Hurd's murder and applied the murder cross-reference embodied in U.S.S.G. § 2D1.1(d)(1) (cross referencing § 2A1.1). Dkt. 145 at 112. As a result, Mr. Mitchell had a base offense level of 43, a criminal history category of IV, and a guidelines range of life in prison, *id.* at 113, which was the sentence the Court imposed, dkt. 129. The Court also imposed a 10-year term of supervised release to be served if Mr. Mitchell were ever released from prison. *Id.* At the time, 10 years was the mandatory minimum term of supervised release, as well as the guidelines range. Dkt. 238 at 15 (Presentence Investigation Report). Mr. Mitchell appealed his sentence—including the application of the murder cross-reference—without success. *Mitchell*, 635 F.3d at 995.

Mr. Mitchell is currently 47 years old and has served more than 15 years of his sentence. He has filed two motions for sentence reduction, invoking both § 404 and § 603 of the First Step Act of 2018. Dkts. 221, 222. Ultimately, Mr. Mitchell asks the Court to reduce his sentence of imprisonment to one within the guidelines range he would face today without application of the murder cross-reference: 121-to-151 months. Dkt. 222. Because he has already served more than 151 months, he asks the Court to release him.[1] As discussed below, the Court agrees that a sentence

---

[1] Mr. Mitchell filed a *pro se* motion for sentence reduction. Dkt. 221. Less than two weeks later, his counsel filed another motion for sentence reduction. Dkt. 222. The new motion functions as an amended motion, so the Court considers only the arguments set forth in the more recently filed motion. Regardless, the main difference between the *pro se* motion and the motion filed by counsel is that the *pro se* motion

reduction is appropriate, but not one of such a magnitude as requested by Mr. Mitchell. Instead, the Court reduces Mr. Mitchell's sentence of imprisonment to 480 months. The Court discusses Mr. Mitchell's two theories of relief below.

## II.   Section 404

First, Mr. Mitchell asks the Court to reduce his sentence under § 404 of the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018), which in turn incorporates portions of the Fair Sentencing Act of 2010 ("Fair Sentencing Act"), Pub. L. No. 111-220, §§ 2-3, 124 Stat. 2372, 2372 (2010).

### A.  Fair Sentencing Act and First Step Act

Congress passed the Anti-Drug Abuse Act of 1986 in an effort to remedy the nationwide fear of drug abuse—in particular—cocaine base. *See generally United States v. Shull*, 793 F. Supp. 2d 1048, 1050 (S.D. Ohio 2011) (discussing the history of cocaine base sentencing and the Anti-Drug Abuse Act of 1986); *United States v. Watts*, 775 F. Supp. 2d 263, 266–67 (D. Mass 2011) (same). The Anti-Drug Abuse Act created a harsh sentencing disparity between cocaine base and

---

includes an argument that application of the murder cross-reference violated Mr. Mitchell's constitutional rights because it was based on facts found by a judge and by only a preponderance of the evidence. Dkt. 221. That argument was raised and rejected in his direct appeal, *see Mitchell*, 635 F.3d at 993, and remains contrary to binding precedent in the Seventh Circuit, *see United States v. Garcia*, 754 F.3d 460, 481–82 (7th Cir. 2014) (discussing U.S.S.G. § 2A1.1 and stating, "The court was entitled to find the facts by a preponderance of the evidence, so long as those facts did not affect either the statutory maximum or the statutory minimum." (cleaned up)).  To the extent that he relies on the possibility of that precedent being overturned in *United States v. McClinton*, that case involved whether acquitted conduct could be considered at sentencing, not uncharged relevant conduct. 23 F.4th 732 (7th Cir. 2022). And, regardless, the Supreme Court denied *certiorari* in that case. *McClinton v. United States*, 143 S. Ct. 2400 (2023). As a result, in the Seventh Circuit, the law remains unchanged. Finally, to the extent that Mr. Mitchell relies on the possibility that the Sentencing Commission will amend the Sentencing Guidelines to forbid the use of acquitted conduct to increase a guidelines range in cases like his, the Sentencing Commission has withdrawn its proposed amended guideline dealing with acquitted conduct in favor of further study. *See* https://www.ussc.gov/about/news/press-releases/april-5-2023 (last visited Nov. 28, 2023). And, in any event, that proposed guideline dealt only with acquitted conduct, not uncharged conduct. *See* https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230201_RF-proposed.pdf (last visited Nov. 28, 2023).

powder cocaine offenses. *Kimbrough v. United States*, 552 U.S. 85, 94–95 (2007); *see also Dorsey v. United States*, 567 U.S. 260, 263 (2012) (noting the act imposed upon an offender who dealt in powder cocaine the same sentence it imposed upon an offender who dealt in one one-hundredth that amount in cocaine base).

That disparity was not addressed until Congress enacted the Fair Sentencing Act in 2010. *Dorsey*, 567 U.S. at 264; *see also United States v. Dodd*, 372 F. Supp. 3d 795, 799 (S.D. Iowa 2019) (noting the Fair Sentencing Act was passed to remedy the disproportionately harsh sentences imposed for cocaine base). Among other things, the Fair Sentencing Act increased the amount of cocaine base required to trigger certain mandatory minimums. *United States v. Booker*, No. 07-CR-843-7, 2019 WL 2544247, at *1 (N.D. Ill. June 20, 2019) (citing *Dorsey*, 567 U.S. at 264). For example, when a defendant has a prior felony drug conviction, it increased the amount of cocaine base required to trigger a sentence between the range of 20 years to life in prison from 50 grams to 280 grams. 21 U.S.C. § 841(b)(1)(A)(iii) (eff. Aug. 3, 2010, to Dec. 20, 2018)[2]; *see also Booker*, 2019 WL 2544247 at *1.

Signed into law on December 21, 2018, the First Step Act allows for retroactive application of the Fair Sentencing Act's reduction in the disparity between cocaine base and powder cocaine sentences. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 115th Cong. § 404 (2018). Section 404 reads as follows:

> (a) Definition of covered offense.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

---

[2] Section 401 of the First Step Act again amended the sentences set forth in § 841(b) in cases in which the United States filed an information under 21 U.S.C. § 851 alleging that the defendant had certain prior felony convictions. *See* 132 Stat. at 5220–21. Those changes are discussed in connection with the sentencing factors under 18 U.S.C. § 3553(a), below.

>    (b) Defendants previously sentenced.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.
>
>    (c) Limitations.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

Pub. L. No. 115-391, § 404.

In other words, § 404 of the First Step Act permits this court to impose a reduced sentence for certain offenses that were committed before August 3, 2010, in accordance with the Fair Sentencing Act, if no such reduction was previously granted. *Id.* §§ 404(b), (c). When considering a motion to reduce sentence under § 404, a district court is first "faced with the question of whether the defendant is eligible for a sentence reduction. If the defendant is eligible, then the court faces the question of whether it *should* reduce the sentence." *United States v. Hudson*, 967 F.3d 605, 610 (7th Cir. 2020) (citing *United States v. Shaw*, 957 F.3d 734, 736 (7th Cir. 2020)).

**B. Eligibility**

The United States concedes that Mr. Mitchell is eligible for a sentence reduction under § 404, *see* dkt. 2291 at 1, 12, and the Court agrees. He committed his offenses before August 3, 2010; his sentence was not imposed or previously reduced in accordance with the Fair Sentencing Act; and he has not previously had a § 404 motion denied after a full review of the merits. In addition, the Fair Sentencing Act modified the penalties for his statute of conviction. When he was sentenced, the statutory range for 50 grams or more of crack was 10-years-to-life (or 20-years-to-

life with a single prior drug felony conviction), but after passage of the Fair Sentencing Act, the statutory range for such a conviction was reduced to 5-to-40 years (or 10-years-to-life with a single prior drug felony conviction). 21 U.S.C. § 841(b)(1)(B)(iii) (eff. Aug. 3, 2010, to Dec. 20, 2018).

Thus, the Court moves to considering whether Mr. Mitchell's sentence should be reduced and, if so, by how much.

### C. Reduction of Sentence

#### 1. Applicable Law

In determining whether to exercise their discretion to grant a sentence reduction under § 404, courts may consider the sentencing factors in 18 U.S.C. § 3553(a). *Shaw*, 957 F.3d at 741. The factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the defendant's crimes; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

In addition, § 404 allows district courts "to consider intervening changes of law or fact in exercising their discretion to reduce a sentence." *Concepcion v. United States*, 597 U.S. 481, 500, (2022); *see also Hudson*, 967 F.3d at 613 (in determining whether the sentence imposed is

"sufficient, but not greater than necessary," under 18 U.S.C. § 3553(a), a court may consider "updated statutory benchmarks, current Guidelines, and post-sentencing conduct when determining whether a reduced sentence is merited"). Section 404 "does not require a district court to accept a movant's argument that evidence of rehabilitation or other changes in law counsel in favor of a sentence reduction," but it must consider such arguments when they are raised. *Concepcion*, 597 U.S. at 502.

As to the issue of post-sentencing changes in law, two changes are particularly relevant to Mr. Mitchell's motions. As mentioned, when Mr. Mitchell was sentenced, he was subject to an enhanced mandatory minimum sentence of 20 years because the government filed a § 851 Information showing that he had previously been convicted of a drug felony. At the time, a defendant qualified for an enhanced mandatory minimum sentence under § 841 if he had a prior conviction for a "drug felony." But, in § 401 of the First Step Act, Congress amended § 841 to require a "serious drug felony" before triggering an enhanced mandatory minimum sentence. 21 U.S.C. § 841(b). That change was not retroactive. First Step Act of 2018, § 401, 132 Stat. at 5220 (2018). In addition, the conviction that enhanced Mr. Mitchell's mandatory minimum sentence was a 1996 conviction for dealing in cocaine from Wayne County, Indiana. Dkt. 13. But, in 2019, the Seventh Circuit held that Mr. Mitchell's statute of conviction cannot serve as a "drug felony" for purposes of § 841. *United States v. De La Torre*, 940 F.3d 938, 952 (7th Cir. 2019).

### 2. Discussion

After considering the parties' evidence and arguments, as well as the § 3553 factors, the Court determines that reducing Mr. Mitchell's sentence of imprisonment to 480 months and his term of supervised release to 5 years results in a sentence that is sufficient, but not greater than necessary, under § 3553.

The Seventh Circuit has instructed that any such analysis must begin with "an accurate comparison of the statutory penalties—and any resulting change to the sentencing parameters—as they existed during the original sentencing and as they presently exist," *United States v. Corner*, 967 F.3d 662, 665 (7th Cir. 2020), so the Court begins there. The parties agree that, when Mr. Mitchell was sentenced, the statutory range was 20-years-to-life because of his prior drug felony conviction. They also agree that, if he were sentenced today, Mr. Mitchell would face a statutory range of only 5-to-40 years because of the changes brought by the Fair Sentencing Act and the fact that Mr. Mitchell's prior conviction would no longer qualify him for an enhanced mandatory minimum sentence. Dkt. 230 at 2; dkt. 229 at 13. The United States urges the Court to exercise its discretion not to give Mr. Mitchell the benefit of the subsequent changes in law, noting that the changes to § 841's mandatory minimum sentences were not retroactive. Dkt. 229 at 13. The United States is, of course, correct that the Court is not required to reduce Mr. Mitchell's sentence to a sentence commensurate with what he might receive if sentenced today. Here, however, the Court finds that it is appropriate to consider the updated statutory ranges as one factor in determining whether to reduce Mr. Mitchell's sentence and, if so, by how much. *Se Concepcion*, 597 U.S. at 500; *Hudson*, 967 F.3d at 613.

As to the guidelines range, the parties also agree that, if he were sentenced today, Mr. Mitchell's guidelines range would be 480 months—that is, the statutory maximum.[3] Dkt. 230 at 10 n.4; dkt. 229 at 15. That range is largely driven by the application of the murder cross-reference.

---

[3] This calculation is based on an offense level of 43 and a Criminal History Category of III. Mr. Mitchell's Criminal History category is now lower than it was when he was originally sentenced because, under the current guidelines, Mr. Mitchell would no longer receive two criminal history points for committing his offense less than two years following his release from custody (formerly known as "recency points"). *See* dkt. 230 at 10–11 (discussing recency points under newly amended guidelines).

8

Turning to the § 3553 factors, weighing in Mr. Mitchell's favor, he has submitted letters expressing that he now understands that drug dealing is not a victimless crime and recognizes the impact he had on his community (although he continues to deny any involvement in the murder of Mr. Hurd). Dkts. 222-1, 223-1. He represents that, if he is released, he will have a place to live and a job. *Id*. He has earned a GED, has earned more than 20 certificates in courses during his incarceration, and has completed drug education. Dkts. 222-2, 222-3. He has participated in the Challenge program and may have completed it by the time of the writing of this Order. Dkt. 229 at 7 (noting tentative completion date of September 14, 2023). He suffers from severe neovascular glaucoma in his right eye and hypertension. Dkt. 222 at 17–18. It appears that he is receiving treatment for those conditions in prison, *see, e.g.*, dkt. 222-8, but he represents that, if he were released, his medical issues would be addressed and paid for privately. *Id.* The BOP has also rated him as presenting a low recidivism risk. Dkt. 229-2. In addition, Mr. Mitchell has submitted letters of support from his fiancée, the mother of his daughter, and two relatives, indicating that he would have support if released. Dkts. 222-4 through 222-7.

However, weighing against him, Mr. Mitchell distributed a significant amount of crack. And the Court found by a preponderance of the evidence that Mr. Mitchell participated in the murder of a government informant, an extremely serious aggravating factor. Notably, when the Court originally sentenced Mr. Mitchell, it could have imposed a sentence as low as 20 years of imprisonment (the mandatory minimum sentence for him at the time) but elected to impose a top-of-guidelines life sentence in large part because of the facts associated with Mr. Hurd's murder. In addition, Mr. Mitchell has a significant criminal history, including a previous felony conviction for dealing cocaine for which he served a significant amount of time in prison, including time

9

served after his probation was revoked. Dkt. 233 at 7–9.[4] While he was on probation for that conviction, he was convicted of misdemeanor battery after punching a victim and biting her on the back, and, a few years later, he was convicted of felony criminal recklessness after breaking a bottle over the head of a bouncer at a club. *Id.* at 8–9. Those convictions are, at this point, about two decades in the past, but they weigh in the Court's consideration of the appropriate sentence for Mr. Mitchell. Finally, while Mr. Mitchell's conduct record has apparently been clean in the last few months, his overall disciplinary record is somewhat concerning. He has been disciplined multiple times, including several sanctions for incidents involving drugs and alcohol. Dkt. 229-5. And some of his discipline is recent, including a June 2023 sanction for possessing unauthorized items and a March 2022 sanction for phone abuse. *Id.*

Based on all of these considerations, the Court determines that reducing Mr. Mitchell's sentence to 480 months of imprisonment and 5 years of supervised release is appropriate and sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a)(2).[5] The terms of supervised release will remain the same as those stated in the Judgment docketed on April 7, 2010. Dkt. 129.

In making this determination, the Court acknowledges Mr. Mitchell's argument that the Court should give him a sentence in the 121-to-151-month range, which would be his guidelines

---

[4] The Court recognizes that Mr. Mitchell was ultimately released from prison for this offense on September 14, 2003—and not on September 14, 2005, as stated in the Presentence Investigation Report. *See* dkt. 222 at 19; dkt. 222-9.

[5] The Court acknowledges that the United States argues that the Court should maintain the 10-year term of supervised release originally imposed. The Court declines to do so, however, because the 10-year term was driven by the mandatory minimum sentence at the time, which would be only 4 years if Mr. Mitchell were sentenced today. 21 U.S.C. § 841(b)(1)(B) (eff. Dec. 2, 2022). Likewise, at the time of the original sentencing, the guidelines range for supervised release was 10 years, but now it is only 4-to-5 years. The Court also notes that Mr. Mitchell will be in his mid-to-late 60s when he is released, so it determines that the original 10-year term of supervised release is greater than necessary to comply with the purposes of § 3553.

range without application of the murder cross-reference. Dkts. 222, 230. Mr. Mitchell does not take issue with the Court's prior determination—by a preponderance of the evidence—that the murder cross-reference applied. Dkt. 230 at 9. Nor does he argue that the murder cross-reference itself is invalid. *Id.* Instead, he explains that he "raises this issue simply to point to the disparity between his sentence based on the jury's finding and the sentence based on a judicial finding proved by a preponderance of the evidence." Dkt. 222 at 18. Mr. Mitchell's counsel made this exact argument when he was originally sentenced. Dkt. 145 at 117 (arguing that, without the murder cross-reference, Mr. Mitchell's guidelines range would be 168-to-210 months, urging the Court to impose a sentence closer to the 20-year mandatory minimum and stating, "I would ask the Court to take into account that although you have made the determination by a preponderance of the evidence that he was involved in that, that the evidence that was presented to you was not of the type which would support a conviction in a criminal case, I do not believe."). The Court rejected the argument then and rejects it now. The Court acknowledges that there is a disparity between the advisory guidelines range that would apply if it considered only facts found by the jury but does not find that disparity to be a reason to warrant such a massive downward departure. Instead, for the reasons explained above, the Court finds that a sentence of 480 months of imprisonment is sufficient, but not greater than necessary, under § 3553.

### III.    Section 603

Mr. Mitchell also relies on § 603 of the First Step Act to support his request for a sentence in the 121-to-151-month range, which would result in his immediate release. Section 603 is codified at 18 U.S.C. § 3582(c)(1)(A)(i) and permits a court to reduce a sentence "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," if it finds that

11

there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i).

Mr. Mitchell puts forward the following potentially extraordinary and compelling reasons warranting a sentence reduction: under newly amended U.S.S.G. § 1B1.13(b), Mr. Mitchell has served more than 10 years of an unusually long sentence and a post-sentencing change in the law has resulted in a gross disparity between the sentence he is serving and the sentence likely to be imposed today; post-sentencing rehabilitation, education, and conduct; family support and employment opportunities if released; health issues (glaucoma and hypertension) that could be addressed and paid for privately if he were released; at sentencing, his guidelines range was driven by the murder cross-reference, the underlying facts of which were not determined beyond a reasonable doubt by a jury; if Mr. Mitchell were sentenced today without the murder cross-reference, his guidelines range would be 121-to-151 months; and it is inequitable that "well-connected" inmates like Michael Cohen, Paul Manafort, and Kwame Kilpatrick have been released after serving only a fraction of their sentences when "regular inmates" remain behind bars. Dkt. 222 at 10–22.

The United States argues that none of these factors amount to extraordinary and compelling reasons warranting a sentence reduction. Dkt. 229 at 22–29. The Court agrees as to the argument about the alleged inequities associated with the fact that some "well-connected" inmates have been released. Mr. Mitchell is, of course, correct that some high-profile inmates have been granted compassionate release, but he offers no reason to believe that the facts of his case are in any way comparable to the facts in those cases. The Court thus declines to consider this factor—whether alone or in combination with any other—as an extraordinary and compelling reason potentially warranting a sentence reduction.

12

As to the other factors, the Court need not decide whether they are extraordinary and compelling reasons warranting a sentence reduction. Even if one or more of them—whether considered alone or in combination—could theoretically constitute an extraordinary and compelling reason, under § 3582(c)(1)(A), the Court would then proceed to consideration of the § 3553 factors. The Court has already considered those factors, including all of the facts Mr. Mitchell puts forward as potentially extraordinary and compelling. And, as explained, the Court has determined that a sentence of 480 months of imprisonment and 5 years of supervised release is sufficient, but not greater than necessary, under § 3553. Put another way, reducing Mr. Mitchell's sentence below that mark would not: reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, or protect the public from further crimes of the defendant.

### IV.     Summary and Conclusion

For the reasons stated above, Mr. Mitchell's motions for sentence reduction, dkts. [221] and [222], are **granted** to the extent that the Court reduces his sentence to 480 months of imprisonment and 5 years of supervised release under § 404 of the First Step Act, but **denied** to the extent that he seeks an even lower sentence under § 404 or under § 603 of the First Step Act. The terms of his supervised release remain the same as those stated in the Judgment docketed on April 7, 2010. Dkt. 129.  Mr. Mitchell's *pro se* motion for Court assistance, dkt. [226], is **granted** to the extent that the Court explains that the Court has sufficient information to decide Mr. Mitchell's motions for sentence reduction, and there is no need for the United States to respond to his arguments any further.[6]

---

[6] The Court has also reviewed Mr. Mitchell's *pro se* supplement to his counsel's motion, dkt. 231, but nothing in that supplement changes the Court's conclusions.

Within **3 business days of the date of this Order, counsel for the United States is ordered** to do the following: (1) transmit the contemporaneously filed AO247 to Mr. Mitchell's custodian; and (2) file a notice with the Court confirming that transmission of the AO247 has occurred.

**IT IS SO ORDERED.**

Date: 11/30/2023

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel of Record via CM/ECF

Rollie Montez Mitchell
Reg. No. 08818-028
USP Canaan
U.S. Penitentiary
P.O. Box 300
Waymart, PA 18472